HORACE F. GREEN and HAZEL GREEN, Plaintiffs and Respondents, v. WILLIAM G. WOLFF and BERTHA J. WOLFF, Defendants and Appellants (two cases).

No. 10238.

Submitted April 2, 1962. Decided June 12, 1962.

372 P.2d 427.

414

Sandall, Moses, Cavan & Battin, Billings, Charles F. Moses (argued orally), Billings, for appellants.

Anderson, Symmes, Forbes, Peete & Brown, Billings, Rockwood Brown, Jr. (argued orally), Billings, for respondents.

MR. JUSTICE CASTLES delivered the Opinion of the Court.

This is an appeal from a judgment entered upon a jury verdict in two cases consolidated for trial. The judgment was in favor of the plaintiffs, respondents here, in the amount of $37,978.62 plus costs. Motion for a new trial was made and denied.

The appellants, defendants below, are husband and wife and the owners of a ranch in Rosebud and Treasure Counties, consisting of about five thousand acres, one-half deeded and one-half leased lands. The ranch included over three hundred acres of cultivated lands, the remainder being range and ranch land.

The respondents, plaintiffs below, are also husband and wife, and in the year 1954 they became the tenants of the ranch owned by appellants. Hereinafter the parties will be referred to by their last name, appellants as Wolff and respondents as Green. Thus the owners and landlord are Wolff; the tenants are Green.

In 1954, Wolff leased the ranch to Green whereby the parties agreed to share equally the profits of a cow and calf operation, Green to do the ranching, Wolff to furnish the stock. Wolff furnished about one hundred fifty head of cows and no difficulty was had.

In 1955, the parties entered into a new leasing agreement, which agreement and the operation thereunder became the subject of the lawsuits involved in this appeal. In the fall of 1955 the parties decided to convert the operation to a steer operation. A new agreement was entered into dated December 22, 1955. This agreement is on a U.S.D.A. form issued by the Farmers Home Administration in Forsyth entitled "Standard Farm Lease" and is for a term of four years. By this agreement,

Green was to do the farming and ranching. Wolff was to supply six hundred head of steers to be marketed in the fall. The number of acres cultivated was shown with a share of crops provided. The agreement also provided that "The acres of crops and numbers of livestock shown above are those planned for the first year of this lease, and may be changed from year to year by mutual agreement." The net proceeds on the steer operation were to be divided equally. Aside from the share crop arrangement, it was provided that Green pay $435 as annual rental in cash.

On December 21, 1955, Wolff and Green as second parties obtained a four year agreement with one Monte for grazing privileges for 600 head of yearling steers for six months each summer season for a price of $3,900 per season.

The steers were purchased by Wolff that same fall and wintered on the Wolff ranch by Green. The steers were sold in the fall of 1956, the profit divided and no problem was had.

In the fall of 1956 steers were again purchased, numbering 604 head. Wolff also purchased 160 head of heifers. These cattle, steers and heifers were wintered on the ranch and in the spring the heifers were marketed. The steers were summered on the Monte pasture. However, it is at this point that a difference arises. Wolff contends that the 160 head of heifers were a separate deal of his own and not part of the agreement. Green contends they are part of the same deal. At any rate, sometime in the spring of 1957, differences arose between Green and Wolff. Wolff made it known that he intended to get Green off the ranch. Wolff previously had been something of an absent landlord, being a Federal Government employee in Billings. By this time he had retired and moved onto the ranch in spite of a provision in the lease agreement that his right to be on the premises at reasonable times was for repairs, improvements and inspection. Following this, according to Green's version, Wolff pursued a course of harrassment and interference with Green's operation under the agreement. Wolff, without participation or approval of the Greens, caused the Monte lease of grazing lands

to be cancelled. Wolff gathered the steers in the fall of 1957 without notifying Green and sold them in September.

Green continued in possession of the premises for the full term of the lease. However, the parties did not reach an agreement on the proceeds of the 1956-1957 operation nor, so far as the cattle operation was concerned, did they operate as if under the terms of the agreement. Green continued to operate the ranch and took cattle to graze at a price per head. Wolff continued to buy cattle and operated on other grazing lands, but did not pretend to operate under the terms of the lease.

In the fall of 1957, Mrs. Wolff at the suggestion of an attorney, contacted Green to reach a solution. Green agreed to quit the premises if a satisfactory accounting was had. None was ever arrived at.

In September 1958, Green filed an action against Wolff. The first cause of action was for an accounting of the operation of 1956-1957, seeking one-half share of the proceeds of the sale of the heifers and steers in 1957 less certain credits due Wolff. The second cause of action was for net profits for the year 1957-1958, which Green would have received had Wolff furnished the required 600 head of steers in the fall of 1957 to be marketed in the fall of 1958.

A subsequent action was filed for loss of profits for the 1958-1959 operation. The foregoing is a general statement of the situation bringing on this appeal. The record is somewhat voluminous and the briefs are likewise lengthy. The appellants have set forth twenty specifications of error which are directed to all stages of pleadings, trial, instructions, and rulings of law. The specifications of error are further subdivided. The appellant argues in subheadings not keyed to the specifications of error. We shall attempt to analyze the appeal in conformity with the briefs as much as possible. We shall state facts in keeping with the rule that a jury verdict is conclusive if there is substantial evidence to support it.

The first argument of appellants is directed to the alle-

gations of the complaint. Wolff demurred on the grounds that there were not sufficient facts alleged to constitute a cause of action. This was overruled. Then Wolff objected to the introduction of any evidence on several grounds. This too was overruled. Wolff's position is that the first cause of action is improperly pleaded in that the general averments are in conflict with the lease agreement which is pleaded *haec verba*. Wolff contends that the allegations of paragraph II are inconsistent with the agreement in that the allegations concerning the commercial production of livestock and the defendant's obligation to furnish at his own expense 600 head of hereford steers to be marketed in the fall, the proceeds to be equally divided, are in conflict with the written agreement. We have examined paragraph II and find that it is an accurate paraphrasing of the written agreement, insofar as the written agreement goes. The written agreement clearly contemplates certain other matters such as ''that such steers shall be marketed in the fall of the year at a time agreed upon by the lessor and lessee.'' To plead then that the steers were to be marketed in the fall is not in conflict with the agreement.

Next, Wolff claims that loss of profits must be specially pleaded and the facts giving rise to such loss set forth in the pleading. He then asserts that the complaint pleads the claim as general damages without sufficient facts upon which a jury could establish whether there was any loss of profits. It is at once apparent that Wolff did not specially demur. (See Rickards v. Aultman & Taylor Machinery Co., 64 Mont. 394, 210 P. 82.) But even so, appellant urges that the case of Whitelaw v. Vallance, 60 Mont. 172, 198 P. 449, governs the situation.

In the Whitelaw case it was alleged that defendants were to deliver to plaintiff two carloads of potatoes for $1.30 per hundred, that they failed to do it and that plaintiff was damaged in the amount of $700. This court set aside the trial court's directed verdict and ordered a new trial. One of the reasons for the court's holding was that the contract, as alleged in the

complaint, was silent as to time of performance and even the use of the potatoes was not alleged. The decision relied on a general statement of law from O'Brien v. Quinn, 35 Mont. 441, 90 P. 166, for the rule that "Damages for loss of business and profits could only properly come under the designation 'special damages'."

However, the general statement from the O'Brien case and the Whitelaw case was referred to in Rickards v. Aultman & Taylor Machinery Co., 64 Mont. 394, 400, 401, 210 P. 82, and it was there pointed out that as against a general demurrer it is sufficient to plead damages without pleading what was referred to as the true measure of damages. Also, in Carlson v. Stone-Ordean-Wells Co., 40 Mont. 434, 442, 107 P. 419, the same argument as made here was disposed of as follows:

"It is further urged that the complaint is insufficient to support a judgment for special damages. The objection, however, assumes that special damages were recovered. In O'Brien v. Quinn, 35 Mont. 441, 90 Pac. 166, we stated the general rule applicable to circumstances such as appeared from the record in that case to be that loss of profits is to be classed as special damages, and that rule has the approval of the authorities generally. But where the very object of, and inducement to, a particular contract, are the profits which are to accrue to one of the parties to it, and these facts are understood by both in making and carrying out the agreement, so far as it is carried out, then, for a wrongful breach of that contract by the other party to it, the one whose profits are thus cut off may recover his loss of profits as general damages, upon the theory that such loss will necessarily result from the breach of that character of contract. The general principle underlying this rule was early stated by Judge Cooley, in Burrell v. New York & Saginaw Salt Co., 14 Mich. 34, a leading case which has been followed repeatedly in this country. See, also, 8 Am. & Eng. Ency. of Law, (2d Ed.) 622; Tahoe Ice Co. v. Union Ice Co., 109 Cal. 242, 41 Pac. 1020. We think the present case falls within the

rule just announced, and that recovery was had for general damages only.

"That loss of profits may be recovered as an element of damages for the breach of a contract is not now an open question." See also Solberg v. Sunburst Oil & Gas Co., 73 Mont. 94, 108, 235 P. 761.

Here the "very object of, and inducement to" the contract is the share in net profits of the cattle operation and the share of the crops.

We hold that the contract, breach, and damages were sufficiently alleged.

■ Next appellant Wolff urges that there was an impossibility of performance of the contract in that the "Monte lease" was an essential part of the operation, and the loss of that lease caused the contract to become impossible to perform. The record makes it clear that summer pasture, in addition to the home ranch, was necessary to conduct the operation of the cattle. It is also clear that the Monte lease adequately filled this need. But, it is uncontradicted that summer grazing was available in other pastures. In the fall of 1957, no additional pasture was necessary because the steers, if furnished, would have been wintered on the home ranch. Wolff made no attempt to furnish them. In the 1955-1956 and 1956-1957 operations, the parties in actual practice carried the Monte pasture expense of $3,900 per year as a cost of operation fully reimbursable to Wolff. The record reveals that Wolff acquired some 350 head of cattle but ran them on his own—not under the contract. Much more from the evidence could be recited to show that Wolff's theory of impossibility of performance simply did not apply to the proof. Wolff's assertions concerning instructions in this regard are deemed without merit.

■ Next, appellant Wolff asserts that in one cause of action regarding the 1958-1959 cattle operation respondent Green did not fully perform in that he did not show that he was at all times ready, willing and able to perform. To assert this, Wolff

recites evidence that Green took in other cattle on the home-ranch to winter at a rental of so much per head; that the home ranch could not winter the additional 426 head of cattle if Wolff had supplied the 600 head under the contract; and that there-fore he, Green, was not able to perform. In addition, on one group of cattle that were pastured by Green on a monthly rental basis plus a share in the weight gain, appellant Wolff contends that Green did not account for one-half of the profit from the weight gain. This latter contention is made parenthetically. Green did credit all the income from rentals as credit on miti-gation of damages. It is obvious from the record that Green might very well have wintered the cattle in question on his own share of the crops under the contract, and if this were not so, the burden of proof was on Wolff. (See A. T. Klemens & Son v. Reber Plumbing & Heating Co., 139 Mont. 115, 360 P.2d 1005, and Garden City Floral Co. v. Hunt, 126 Mont. 537, 255 P.2d 352.)

The record reveals that Green did pasture cattle, but also credited the income received in mitigation of damages. The court instructed the jury as to mutual termination of the lease, as to the requirement that respondent Green must have per-formed all the terms and conditions on his part to be performed before recovery could be had, and there was substantial evi-dence to show that the jury could determine the questions. We have examined the instructions given and those refused and have determined that the jury was fairly and adequately in-structed.

Next appellant urges that the judgment cannot stand because the real parties in interest as revealed by the exhibits have not been joined as parties. He makes this contention be-cause Exhibit No. 1 reveals that Green assigned 50 percent of the net sale proceeds of ''750 steers'' for the 1957 operation to the Farmers Home Administration to secure a loan made to Green. The instrument on its face is clearly a security device with Green the ''borrower.'' It is not an absolute assignment.

This matter was not pleaded, but even so, a security device covering a particular debt such as this does not affect the status of Green as the real party in interest. (See Reid v. Hennessy Co., 45 Mont. 462, 124 P. 273.) R.C.M.1947, § 93-2801, as to real parties in interest, has been held by this court in Streetbeck v. Benson, 107 Mont. 110, 80 P.2d 861, to have the purpose of protecting the debtor from a second suit. There is no such contention made here, nor under the circumstances of this case could there be.

■ Next appellant urges that error was committed in the trial court's refusal to allow testimony concerning damages to appellant for loss of use of the land. Appellant also urges, in this connection, that he was entitled to an instruction on damages if the jury found a mutual termination of the lease. We are simply unable to see from the record any reasonable evidence of mutual termination, and, even though the court gave an instruction on mutual termination, no further instruction was required because the appellant already had more than he was entitled to.

■■ Next, appellant urges that it was error for the trial court to rule against appellant's objection to the introduction of evidence and a motion for nonsuit, both directed to the failure to plead or prove "arbitration" under the terms of the contract.

The contract provided:

"(6) Any differences between the parties under this lease that cannot be settled after thorough discussion, shall be submitted for arbitration by a committee of three disinterested persons, one selected by each party hereto and the third by the two thus selected, and their decision shall be accepted by both parties."

In the instant case, no arbitration was had. The complaint plead generally that, "* * * and [plaintiffs] in every respect duly performed all and every [one] of the terms and conditions of said agreement."

In Wortman v. Montana Cent. Ry. Co., 22 Mont. 266, 56 P. 316, this court citing Randall v. American Fire Insurance Co., 10 Mont. 340, 25 P. 953, held that a provision in a contract requiring all differences or controversies arising between the parties as to their rights and liabilities to be submitted to arbitration will not be allowed to interfere with, or bar the litigation of such controversies when brought into court. The conclusion was reached on the basis of R.C.M.1947, § 13-806, which makes void contract provisions restricting access to the courts.

Appellant cites Solem v. Connecticut Fire Ins. Co., 41 Mont. 351, 109 P. 432, and Aetna Ins. Co. v. Hefferlin, (9th Cir.1919) 260 F. 695, for the proposition that failure to have arbitration under the contract provision renders the matter non-actionable. However, in the Solem case this Court at p. 353 of 41 Mont. at p. 433 of 109 P. said, "When the parties agreed to submit the amount of plaintiff's loss to arbitration, and pursuant to such agreement the appraisers made their award, such award, unless set aside, was binding upon both parties * * *." This is far different than here.

Our arbitration statute, R.C.M.1947, § 93-201-1, provides:

"*What may be submitted to arbitration, and when.* Persons capable of contracting may submit to arbitration any controversy which might be the subject of a civil action between them * * *."

This contemplates voluntary submission of disputes in existence at the time of the agreement and does not change our existing law.

Next, appellant asserts that Green is estopped from requiring Wolff to supply the cattle. This assertion is made because of evidence of a conversation between Green and Mrs. Wolff in August, 1957. Mrs. Wolff wanted Green to vacate the premises. Green said he would if a settlement of the entire contract could be achieved. The evidence is clear that no settlement of the entire contract was attempted. Wolff only wanted to settle for one year. Green mailed his check for $435 represent-

ing the cash rental for the ensuing year on December 19, 1957. The check was refused and returned by Wolff. Wolff, by every statement and action, had repudiated the agreement and indicated that he, unilaterally, did not intend to pursue the agreement. We fail to see how any principle of estoppel against Green can operate, and the court did not err in refusing to instruct on that theory.

Next appellant urges that the court erred in refusing to grant his motion for dismissal and nonsuit made at the close of plaintiff's case on the grounds that plaintiff elected his remedy of breach of contract when the first suit was filed before the end of the 1957-1958 season, and that thereafter, having elected to treat the contract as breached, he could not treat each year as a divisible part of the contract. We have some difficulty in grasping the theory advanced, and will quote the objection and motion made to the trial Court:

"3. In the third place, your Honor, the defendants, and each of them, object and ask for a nonsuit and dismissal and for a directed verdict upon the grounds that by the pleadings in this case the plaintiffs, and each of them, have elected a remedy and such remedy that they have elected is an election to bring an action for a profit of the operation and accordingly are bound by such election, and any evidence which would in any way aid the plaintiffs would be incompetent, irrelevant and immaterial and at variance with the pleadings in their complaint."

Later, in an effort to explain his position, counsel stated in part: "The contract is cancelled. If you want to bring an action for loss of profits, if you want to stay in possession, you can't have both. * * *"

The contract here contained several divisible parts. It ran for four successive years and each year of the farm operation and each year of the livestock operation is a separate phase to be separately performed and settled. In the first years, the

parties treated the contract that way, too. R.C.M.1947, § 93-8704, provides:

"Successive actions may be maintained upon the same contract or transaction, whenever, after the former action, a new cause of action arises therefrom." This governs the situation here. See also McFarland v. Welch, 48 Mont. 196, 136 P. 394, and Cohen v. Clark, 44 Mont. 151, 119 P. 775.

Appellant asserts three other grounds for reversal including damages, use of notes, and instructions. It would unduly lengthen this opinion to discuss each separately, but we have examined them and find no prejudicial error committed.

The verdict and judgment is affirmed.

MR. CHIEF JUSTICE JAMES T. HARRISON and MR. JUSTICES ADAIR, DOYLE and JOHN C. HARRISON concur.