TIMOTHY J. GIBBS, RODERICK D. GIBBS,
L.H. "LEE" GIBBS, and L.H. "LEE" GIBBS,
REGINALD L. GIBBS, TRUSTEES OF THE
R'DELLE GIBBS FAMILY TRUST,
Plaintiffs and Appellants,
v.
JAMES ALTENHOFEN, DELWIN
C. NORDTVEDT, and CHMS, P.C.,
Defendants and Appellees.

No. DA 13-0642.
Submitted on Briefs June 25, 2014.
Decided July 29, 2014.
2014 MT 200.
376 Mont. 61.
330 P.3d 458.

For Appellants: **Thomas E. Towe, Yvette K. Lafrentz,** Towe, Ball, Mackey, Sommerfeld & Turner, PLLP, Billings.

For Appellees: **Leonard H. Smith, Christopher C. Stoneback,** Crowley Fleck PLLP, Billings (*Attorneys for Delwin C. Nordtvedt and CHMS, P.C.*); **John R. Christensen, David T. Sulzbacher,** Christensen, Fulton & Filz, PLLC, Billings (*Attorney for James Altenhofen*).

JUSTICE COTTER delivered the Opinion of the Court.

¶1 Timothy Gibbs (Tim), Roderick Gibbs (Rod), and L.H. "Lee" Gibbs, individually, and L.H. "Lee" Gibbs and Reginald Gibbs, as trustees of the R'Delle Gibbs Family Trust (collectively the Gibbs), appeal from orders of the Seventh Judicial District Court, Dawson County, granting James Altenhofen, Delwin Nordtvedt, and CHMS's motions for summary judgment. We affirm in part and reverse and remand in part.

## ISSUES

¶2 The Gibbs raise the following issues on appeal:

*1. Did the District Court err in finding that the Gibbs' claims against Nordtvedt were barred by the doctrine of claim preclusion?*

*2. Did the District Court err in finding that some of the Gibbs' claims were barred by the doctrine of judicial estoppel?*

*3. Did the District Court err in finding that some of the Gibbs' claims were barred by the doctrine of issue preclusion?*

*4. Did the District Court err in concluding that there were no genuine issues of material fact to preclude summary judgment?*

*5. Did the District Court err in dismissing Altenhofen as a party defendant because the claim against him was time-barred?*

## FACTUAL AND PROCEDURAL BACKGROUND

¶3 Lee and R'Delle Gibbs owned a family ranch in Dawson County, Montana, and had four children: Tim, Rod, Roy, and Reginald Gibbs. R'Delle executed a trust agreement in July 2000 conveying her one-half interest in the ranch in trust for the benefit of R'Delle and Lee during their lifetimes. Upon R'Delle's death in August 2000, Lee disclaimed his interest in the trust property, and R'Delle's one-half interest in the property passed into the family trust. Pursuant to the trust, the real property was to be divided equally between Tim and Rod if the ranch operations were profitable within six months of the last remaining parent's death.

¶4 In November 2001, the Gibbs asked Altenhofen to serve as trustee of the family trust. They later removed him as trustee on June 29, 2005, at which time he gave the trust records to the successor trustee, Nordtvedt. Nordtvedt was a certified public accountant with the firm CHMS, P.C. in Glendive, Montana. On October 6, 2006, the Gibbs received a letter from Nordtvedt advising them of potential claims against Altenhofen for misappropriation of trust funds.

¶5 The trust took over ranch operations in 2003, and Tim and Rod controlled operations in 2004 and 2005. When the trust became delinquent in its obligations, Altenhofen, and later Nordtvedt, tried to sell the trust's one-half interest in the ranch. On August 5, 2005, Nordtvedt filed an action in the Thirteenth Judicial District Court, Yellowstone County, requesting that the court determine whether any restrictions existed in the trust agreement limiting the trustee's power to sell the real and personal property included in the trust estate. Nordtvedt moved for summary judgment, arguing that not only did he have the authority to sell the trust's real property to non-beneficiary third parties, but that he was obligated to do so as a prudent investor. By this point, Lee had decided to sell his half of the property and had signed a buy/sell agreement. Tim and Rod filed cross-claims against Nordtvedt, alleging, inter alia, breach of the duties of loyalty, to administer the trust, to deal impartially with beneficiaries, and to avoid conflicts of interest. The court granted Nordtvedt's motion, agreeing with Nordtvedt that "the prudent investor rule does indeed call for the sale of the property." Judgment was entered in Nordtvedt's favor on March 30, 2006. Tim and Rod did not seek to alter or amend the judgment pursuant to M. R. Civ. P. 59. They did not seek relief under M. R. Civ. P. 60 and did not appeal the court's decision.

¶6 The Gibbs filed a complaint against Altenhofen, Nordtvedt, and CHMS on July 11, 2008, alleging claims for breach of fiduciary duty.

The Gibbs alleged that Nordtvedt had a conflict of interest and breached his fiduciary duty in approving the sale of the ranch, obtaining court approval for the sale, giving up an arrangement with the Farm Service Administration of the Department of Agriculture, failing to take any action against Altenhofen, and charging excessive fees. On May 8, 2013, Nordtvedt moved for summary judgment. The court granted the motion on August 30, 2013, concluding that the Gibbs were seeking to relitigate claims and issues that either were raised, or could have been raised, in the 2005 litigation. The court determined that the claims against Nordtvedt were barred by the doctrines of issue preclusion, judicial estoppel, and claim preclusion.

¶7 In their complaint, the Gibbs also alleged that Altenhofen breached his fiduciary duty by using trust property for his own benefit and by charging excessive fees. On February 2, 2012, Altenhofen filed a second motion for summary judgment, which the District Court granted on July 10, 2012. The Gibbs and Altenhofen disagreed about whether the court should apply the two-year statute of limitations for conversion claims, the three-year statute of limitations for tort claims, or the three-year statute of limitations for actions brought under the trust code. The court concluded that the claims were not conversion claims, and that, under either three-year statute, the Gibbs' claims against Altenhofen were barred because the complaint was not filed within three years of the date that they discovered or reasonably should have discovered the existence of the claims. The Gibbs timely appealed both orders.

## STANDARD OF REVIEW

¶8 This Court reviews a district court's rulings on motions for summary judgment de novo. *Dewey v. Stringer*, 2014 MT 136, ¶ 6, 375 Mont. 176, 325 P.3d 1236 (citation omitted). Summary judgment is appropriate only when "the pleadings, depositions, answers to interrogatories, and admissions on file," together with any affidavits, demonstrate that no genuine issue exists as to any material fact and that the moving party is entitled to judgment as a matter of law. *Dewey*, ¶ 6 (citation and internal quotation marks omitted).

## DISCUSSION

¶9 *1. Did the District Court err in finding that the Gibbs' claims against Nordtvedt were barred by the doctrine of claim preclusion?*

¶10 The doctrine of claim preclusion (res judicata) bars the relitigation of a claim that a party has already had an opportunity to litigate or

that the party *could have* litigated in the first action. *Brilz v. Metro. Gen. Ins. Co.*, 2012 MT 184, ¶ 21, 366 Mont. 78, 285 P.3d 494 (citations omitted). Thus, "a party may be precluded from litigating a matter that has never been litigated and that may involve valid rights to relief." *Brilz*, ¶ 21. The elements of claim preclusion are: (1) the parties or their privies are the same in the first and second actions; (2) the subject matter of the actions is the same; (3) the issues are the same in both actions, or are ones that could have been raised in the first action, and they relate to the same subject matter; (4) the capacities of the parties are the same in reference to the subject matter and the issues between them; and (5) a valid final judgment has been entered on the merits in the first action by a court of competent jurisdiction. *Brilz*, ¶ 22 (citations and quotation marks omitted). Here, the Gibbs argue that none of the five elements have been met. We address each element in turn; we address the second and third elements last.

¶11 As to the first element of whether the parties or their privies are the same in both actions, the concept of a privy in this context applies to one whose interest has been legally represented in litigation. Privies are "those who are so connected in estate or in blood or in law as to be identified with the same interest and, consequently, affected with each other by litigation." *Wamsley v. Nodak Mut. Ins. Co.*, 2008 MT 56, ¶ 53, 341 Mont. 467, 178 P.3d 102 (citation omitted). The parties on appeal are: Tim, Rod, and Lee; Lee and Reginald as trustees; and Nordtvedt and CHMS.[1] The parties in the original litigation were Tim, Rod, the trust, and Nordtvedt. Nordtvedt and CHMS were in privity because Nordtvedt was a shareholder in CHMS when he was acting as trustee. It is irrelevant that the Gibbs originally sued Nordtvedt in his capacity as trustee and now sue him individually; at issue in both lawsuits are actions he took as trustee.

¶12 As noted, Lee was not a party to the first action. This being so, and because Lee actually supported the trust's decision to sell the property at the time of the first action, he was arguably not in privity with the other Gibbs so as to support a finding of claim preclusion against him. However, his claims against Nordtvedt do not survive in any event, because the doctrine of judicial estoppel bars Lee's present claims against Nordtvedt. *See* ¶¶ 18-19. The District Court did not err in concluding that the privity requirement of claim preclusion is satisfied for all Plaintiffs but Lee.

---

[1] Altenhofen is also a party to the current action, but the doctrine of claim preclusion is only relevant to the claims against Nordtvedt.

¶13 The District Court concluded that the capacities of the parties involved have not changed in the way they relate to the subject matter and issues. The District Court did not err in finding that Rod, Tim, and the trustees, on behalf of the trust, claim damages relating to the construction of the trust and the propriety of Nordtvedt's actions as trustee. Moreover, a valid final judgment has been entered in the first action. Though the Gibbs argue that the lower court's order was only a partial motion for summary judgment, our review of the record does not support this proposition. The order granted summary judgment to Nordtvedt. We have held that summary judgment is a final judgment on the merits for purposes of claim preclusion. *Brilz*, ¶ 26 (citations omitted). Thus, the fourth and fifth elements are satisfied.

¶14 Lastly, we address whether the subject matter was the same in both actions and whether the issues were the same and related to the same subject matter. The District Court concluded that "[a]ll the issues raised in the original action, or that could have been raised, are subsumed within the subject matter of both actions," and that "[a] cursory review of the allegations made in the original action and in the present re-litigation demonstrates the reiteration of issues." There were two issues in the first action: whether Nordtvedt had the authority to sell the trust's real property to a non-beneficiary third party, and whether an agreement regarding an option to purchase existed between the trust, Rod, and Tim. The Gibbs argue that the issue in the second action is whether Nordtvedt breached his fiduciary duty in the administration of the trust and in failing to take action against Altenhofen on behalf of the trust.

¶15 ▮ We conclude that the subject matter and issues were the same for the Gibbs' claims that Nordtvedt breached his fiduciary duty by: approving a sale, seeking court approval for the sale, misrepresenting the profitability of the ranch to obtain court approval, giving up the financial arrangement with the Farm Service Administration of the Department of Agriculture, and acting regardless of an alleged conflict of interest. Because we determined in the preceding analysis that the other elements of claim preclusion are met for these claims, the District Court did not err in granting summary judgment as to these claims. However, two claims survive. The claim that Nordtvedt breached his fiduciary duty by failing to take action against Altenhofen may survive because it does not involve the same issues and subject matter as those in the initial action. Further, because Nordtvedt had been trustee for only five months when the 2005 matter went to hearing, the claim that Nordtvedt charged excessive fees during the

ensuing ten months that he acted as trustee following the 2005 litigation may also survive. As to these two claims, we reverse the order granting summary judgment and remand for further proceedings.

¶16 *2. Did the District Court err in finding that some of the Gibbs' claims were barred by the doctrine of judicial estoppel?*

¶17 "Judicial estoppel precludes a party to an action or proceeding from taking a position inconsistent with the party's previous judicial declarations." *Vogel v. Intercontinental Truck Body, Inc.*, 2006 MT 131, ¶ 10, 332 Mont. 322, 137 P.3d 573 (citation omitted). The doctrine includes four elements, each of which must be satisfied: (1) the estopped party had knowledge of the facts at the time he took the original position; (2) the estopped party succeeded in maintaining the original position; (3) the position presently taken is inconsistent with the original position; and (4) the original position misled the adverse party so that allowing the estopped party to change its position would injuriously affect the adverse party. *Vogel*, ¶ 10 (citation omitted).

¶18 ▮ The District Court determined that the Gibbs were barred from now arguing that the sale of the ranch was inappropriate, that excessive fees were charged to the trust, and that the use of confidential information created a conflict of interest because, in the original action, the trust actually argued that the sale of the ranch was appropriate. It also disputed cross-claims that the trust was improperly managed, that improper expenses and costs were charged to the trust, and that the trustee improperly used personal financial information in the administration of the trust. The Gibbs maintain that judicial estoppel cannot apply because the facts upon which they rely for their present arguments occurred after the 2005 litigation. They specifically argue that the sale resulted in substantial damage to Lee because "Nordtvedt, shown on the documents as Lee's accountant, maneuvered the deal so Lee would suffer all the loss." Nordtvedt counters that Lee signed the buy/sell agreement prior to the original litigation. He points out that the trust previously argued that the sale of the ranch was appropriate and that Nordtvedt appropriately managed the trust.

¶19 The District Court did not err in finding that the elements of judicial estoppel were met. The current trustees are bound by the arguments previously made by the trust under judicial estoppel.

Assuming Lee was a beneficiary,[2] Nordtvedt was not liable to Lee for breach of trust because, by signing the buy/sell agreement, Lee consented to the conduct allegedly constituting the breach. Section 72-34-514(1), MCA (2011) ("[A] beneficiary may not hold the trustee liable for an act or omission of the trustee as a breach of trust if the beneficiary consented to the act or omission before or at the time of the act or omission.").[3] Nothing in the record suggests that Lee was improperly influenced by Nordtvedt when he signed the buy/sell agreement. Thus, the District Court did not err in finding that judicial estoppel barred these claims.

¶20 *3. Did the District Court err in finding that some of the Gibbs' claims were barred by the doctrine of issue preclusion?*

¶21 Once a court decides an issue of fact or law necessary to its judgment, that decision precludes relitigation of the same issue in a different cause of action between the same parties under the doctrine of issue preclusion (collateral estoppel). *Brilz*, ¶ 18 (citation omitted). We apply a four-element test to determine whether relitigation of an issue is barred, and all four elements must be met. The elements are:

> 1. Was the issue decided in the prior adjudication identical to the issue raised in the action in question?
> 2. Was there a final judgment on the merits in the prior adjudication?
> 3. Was the party against whom preclusion is now asserted a party or in privity with a party to the prior adjudication?
> 4. Was the party against whom preclusion is now asserted afforded a full and fair opportunity to litigate the issue which may be barred?

*McDaniel v. State*, 2009 MT 159, ¶ 28, 350 Mont. 422, 208 P.3d 817 (quotation marks omitted).

---

[2] The parties did not raise and the District Court did not consider the argument that Lee was no longer a beneficiary when he disclaimed his interest in the trust. Thus, for purposes of this Opinion, we treat Lee as a beneficiary. *But see Restatement (Third) of Trusts*, § 48 (2003) ("A person is a beneficiary of a trust if the settler manifests an intention to give the person a beneficial interest; a person who merely benefits incidentally from the performance of the trust is not a beneficiary."); Section 72-33-108(1), MCA (2011) (" 'Beneficiary' means a person who has any present or future interest, vested or contingent, and also includes the owner of an interest by assignment or other transfer.").

[3] The District Court decided this case under the statutes in effect prior to the adoption of the Montana Uniform Trust Code in 2013; we do the same.

¶22 The District Court concluded that the Gibbs' claims concerning the propriety of the sale of the ranch and information used in the sale of the ranch were barred by issue preclusion. The Gibbs argue that the issue of whether the trustee had the authority to sell the ranch is not the same issue as whether the sale was in the best interest of the trust beneficiaries or that a fiduciary breach occurred, and that "[t]he precise issue before the lower court in this action was simply not litigated in the previous action." Specifically, they argue the second and fourth elements of issue preclusion are not met. Nordtvedt counters that "[t]he District Court's determination in the Original Litigation that the sale of the ranch was proper necessarily subsumed a determination that it was in the best interest of the beneficiaries and not predicated on improper information." He argues that an issue necessarily implicit in a larger determination is given issue preclusion effect.

¶23 We begin our analysis by addressing the second element of issue preclusion. "To determine whether a final judgment on the merits has been reached, we look to see if the issue was actually litigated and adjudged as shown on the face of the judgment." *McDaniel*, ¶ 39 (citation omitted). "Before giving preclusive effect to a judgment or order, the court should determine that the decision to be carried over was adequately deliberated and firm, even if not final in the sense of forming a basis for a judgment already entered, and should refuse preclusion if the decision was avowedly tentative." *McDaniel*, ¶ 39 (citations, internal quotation marks, and brackets omitted). Here, the Yellowstone County District Court's decision was adequately deliberated. The parties were heard on these issues not only in their respective briefs but also at a December 16, 2005 summary judgment hearing. The court supported its decision with a 10-page opinion. The decision was firm, not avowedly tentative, and it was subject to appeal. The Gibbs did not avail themselves of this option. We accordingly conclude that the second element is met.

¶24 ▮ As to the fourth element, the party attempting to defeat the application of issue preclusion has the burden of establishing the absence of a full and fair opportunity to litigate. *McDaniel*, ¶ 42 (citation omitted). Due process concerns preclude the application of issue preclusion against parties who have not appeared in the prior action because they have never had a chance to present their arguments and evidence on the claim. *See Blonder-Tongue Lab., Inc. v. Univ. of Ill. Found.*, 402 U.S. 313, 329, 91 S. Ct. 1434, 1443 (1971). As discussed under Issue One, the same parties and privies appeared in both actions. The issue of the propriety of the sale of the ranch was

raised, briefed, and argued in the original litigation. The Gibbs have not met their burden of establishing the absence of a full and fair opportunity to litigate, and we conclude this element was met. The District Court did not err in finding that issue preclusion barred some of the Gibbs' claims.

¶25 *4. Did the District Court err in concluding that there were no genuine issues of material fact to preclude summary judgment?*

¶26 The Gibbs argue that, had the District Court properly decided the legal issues, the existence of genuine issues of material fact would have prevented summary judgment. Because we conclude that the District Court did not err in its resolution of the legal issues as to most of the claims and reverse and remand for the remaining claims, we need not address this issue.

¶27 *5. Did the District Court err in dismissing Altenhofen as a party defendant because the claim against him was time-barred?*

¶28 The Gibbs argue that the appropriate statute of limitations is the three-year statute under § 72-34-511(1)(b), MCA, which controls proceedings against a trustee. The Gibbs maintain that the evidence shows that they did not discover the possible existence of the trust's claim against Altenhofen until receiving a letter from Nordtvedt on October 6, 2006, regarding Altenhofen's misappropriation of trust funds, and that the complaint was therefore timely filed on July 11, 2008. They argue that summary judgment was inappropriate because there was a factual question about when they could have discovered the existence of the claim. Altenhofen responds by arguing that, though the District Court applied the incorrect statute of limitations, the court did not err in barring the Gibbs' claims against Altenhofen because any claim for breach of trust, conversion, or breach of fiduciary duty would be barred by a three-year statute of limitations and the Gibbs failed to raise a genuine issue of material fact with respect to the date on which the statute began to run. Altenhofen argues that Nordtvedt had all of the information upon which the Gibbs base their claims by June 29, 2005.

¶29 ■ The District Court did not err in applying the three-year statute of limitations under § 72-34-511(1)(b), MCA. The term trustee "includes an original, additional, or successor trustee, whether or not appointed or confirmed by a court." Section 72-33-108(7), MCA. Altenhofen qualifies as a trustee under this definition. Thus, the Gibbs could file a claim "within 3 years after [they] discovered, or reasonably should have discovered, the existence of the claim." Section 72-34-511(1)(b), MCA. Though the Gibbs argue that they did not learn of the

claim until the October 2006 letter from Nordtvedt, the District Court did not err in concluding that they should have known of the existence of the claim when they terminated Altenhofen as trustee on June 29, 2005. On that date, the facts giving rise to their cause of action reasonably should have been discovered by the Gibbs. Thus, the District Court did not err in concluding that the claims against Altenhofen are barred by the statute of limitations.

## CONCLUSION

¶30 For the foregoing reasons, we affirm in part and reverse and remand in part.

JUSTICES WHEAT, BAKER, McKINNON and RICE concur.