DA 16-0636

FILED

06/13/2017

*Ed Smith*
CLERK OF THE SUPREME COURT
STATE OF MONTANA

Case Number: DA 16-0636

IN THE SUPREME COURT OF THE STATE OF MONTANA

2017 MT 142

LONE MOOSE MEADOWS, LLC,

        Plaintiff, Counter-Claim Defendant
and Appellant,

    v.

BOYNE USA, INC., a Michigan corporation, d/b/a
Big Sky Ski & Summer Resort,

        Defendant, Counter-Claimant
and Appellee,

APPEAL FROM:    District Court of the Fifth Judicial District,
In and For the County of Madison, Cause No. DV-29-09-104
Honorable Loren Tucker, Presiding Judge

COUNSEL OF RECORD:

        For Appellant:

                Quentin M. Rhoades, Robert Erickson, Rhoades Siefert
& Erickson, PLLC, Missoula, Montana

        For Appellee:

                David M. Wagner, Griffin B. Stevens, Crowley Fleck PLLP,
Bozeman, Montana

Submitted on Briefs:  April 26, 2017

Decided:  June 13, 2017

Filed:

                                      Clerk

Chief Justice Mike McGrath delivered the Opinion of the Court.

¶1    Lone Moose Meadows, LLC appeals from a summary judgment ruling in favor of Boyne USA, Inc. We affirm.

¶2    We restate the issue on appeal as follows:

*Did the District Court properly allow Boyne to pursue successive claims for breach of contract?*

**FACTUAL AND PROCEDURAL BACKGROUND**

¶3    Lone Moose Meadows, LLC (LMM) and Boyne USA, Inc. (Boyne) are corporations operating in Big Sky, Montana. Boyne is the owner and operator of Big Sky Resort. LMM is a housing development at the base of Big Sky Resort. In 2002, the parties entered into an operations agreement where LMM would construct a ski lift and pay Boyne to operate it. LMM agreed to pay annual maintenance and operating expenses, as well as a $50,000 yearly depreciation expense. The agreement stated "[LMM] shall not be required to pay any depreciation dollar component of the operating expenses until the 2002-2003 ski season" and "replacement lifts will be constructed and owned by Boyne." In December 2002, Boyne sent LMM a notice of lift operation expenses for the 2002-2003 ski season, which included $50,000 for depreciation expenses. LMM refused to pay, stating it was not required to pay depreciation expenses until Boyne owned the ski lift. Despite non-payment, Boyne continued operating the ski lift, electing to treat the contract as continuing.

¶4    In February 2008, Boyne filed suit for breach of contract. Boyne asserted LMM failed to make depreciation payments and demanded payment under the contract for the

2

seven years of past due payments: 2002-03, 2003-04, 2004-05, 2005-06, 2006-07, 2007-08, 2008-09. LMM contended it was not obligated to make depreciation payments until Boyne owned the lift. The District Court granted summary judgment in favor of Boyne, concluding LMM was obligated to pay $50,000 annually beginning with the 2002-03 ski season. LMM appealed. This Court upheld the District Court's ruling (*Boyne I*).[1] In October 2012, the District Court entered a restated judgment against LMM for seven years of depreciation expenses plus costs, fees, and interest. LMM paid $634,328.19 to Boyne, satisfying the judgment.

¶5     In December 2009, while the above appeal was pending, LMM filed an action against Boyne alleging it had engaged in wrongful collection efforts with respect to the first judgment.[2] Boyne counterclaimed for breach of contract asserting LMM now owed depreciation expenses for the 2009-10, 2010-11, 2011-12 ski seasons. Boyne's counterclaim also included claims for abuse of process, malicious prosecution, and punitive damages, as well as a third-party claim against LMM's owner James Dolan, Sr. The parties settled these claims. LMM voluntarily moved to dismiss the wrongful collection claim and the District Court dismissed it. The only remaining issue was Boyne's breach of contract counterclaim. Boyne moved for summary judgment.

---

[1] *Boyne USA, Inc. v. Lone Moose Meadows, LLC*, 2010 MT 133, 356 Mont. 408, 235 P.3d 1269.

[2] The original complaint included Tyler Restvedt, a process server, as a defendant. LMM voluntarily dismissed him from the lawsuit.

¶6 In October 2015, the District Court held a hearing on Boyne's summary judgment motion. LMM agreed it had not made any payments, but argued that this breach of contract claim was barred under the doctrine of claim preclusion, thus eliminating Boyne's entitlement to a new judgment. The District Court granted Boyne's summary judgment motion. The District Court found that the second suit arose from facts not in existence at the time of the first suit and that Boyne had the right to maintain successive actions for each new breach of the contract as they arose. Boyne was not required to sue for future payments even though LMM's breach was material, and the District Court held LMM's refusal to pay depreciation costs did not amount to anticipatory repudiation of the terms of the agreement. On October 7, 2015, the District Court entered judgment in favor of Boyne for $150,000, plus fees and interest. LMM appeals.

## STANDARD OF REVIEW

¶7 We review de novo a district court's grant or denial of summary judgment, applying the same criteria of M. R. Civ. P. 56 as a district court. *Pilgeram v. GreenPoint Mortg. Funding, Inc.*, 2013 MT 354, ¶ 9, 373 Mont. 1, 313 P.3d 839. We review a district court's conclusions of law to determine whether they are correct and its findings of fact to determine whether they are clearly erroneous. *Pilgeram*, ¶ 9.

¶8 Under M. R. Civ. P. 56(c), judgment "shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law. *Roe v. City of Missoula*, 2009 MT 417, ¶ 14, 354 Mont. 1, 221 P.3d 1200.

4

**DISCUSSION**

¶9    *Did the District Court properly allow Boyne to pursue successive claims for breach of contract?*

¶10   LMM asserts claim preclusion barred Boyne's attempt to collect for three years of depreciation expense payments and that the District Court erred in determining that claim preclusion did not bar Boyne's claims in this matter. LMM contends their initial breach of the contract was so severe that Boyne was required to sue for all depreciation payments under the contract under a theory of anticipatory repudiation.

¶11   Claim preclusion ("res judicata") bars the relitigation of a claim that the party had an opportunity to litigate in a previous proceeding. *Brilz v. Metro Gen. Ins. Co.*, 2012 MT 184, ¶ 18, 366 Mont. 78, 285 P.3d 494. An issue cannot be relitigated under res judicata so long as the parties or their privies are the same, the subject matter of the present and past actions is the same, the issues are the same and relate to the same subject matter, the capacities of the parties are the same to the subject matter and issues between them, and a final judgment on the merits has been entered. *Denturist Ass'n of Mont. v. State*, 2016 MT 119, ¶ 11, 383 Mont. 391, 372 P.3d 466.

¶12   The parties only dispute whether the issues are the same. LMM argues that claim preclusion applies because the issue raised by Boyne is one that could have been raised in the first action and Boyne was required to do so under Montana law in order to preserve that claim. *Gibbs v. Altenhofen*, 2014 MT 200, ¶ 10, 376 Mont. 61, 330 P.3d 458. We are not convinced. "It is an elementary rule of law that where several claims, payable at different times, arise out of the same contract, suit may be brought as each liability

5

accrues." *Cohen v. Clark*, 44 Mont. 151, 155, 119 P. 775, 777 (1911). The issues are not the same. Each law suit addresses different years in the contract.

¶13 Significantly, Montana law expressly grants contracting parties the right to maintain successive actions on the same contract. *State ex rel. Towne v. Second Judicial Dist. Court*, 114 Mont. 1, 132 P.2d 161 (1942); *Green v. Wolff*, 140 Mont. 413, 372 P.2d 427 (1962); § 28-2-1501, MCA ("successive actions may be maintained upon the same contract or transaction whenever after the former action a new cause of action arises therefrom").

¶14 In *Towne*, a couple intended to divorce and created a contract for division of their property as well as care and custody of their minor child. *Towne*, 114 Mont. at 3-4, 132 P.2d at 162. The district court approved the contract. Within the contract, the father agreed to pay $150 to the mother for support of her and the child. *Towne*, 114 Mont. at 4, 132 P.2d at 162. After the child reached age 18, the father refused to pay the monthly $150. Father filed a motion to modify the divorce contract as to the amount of monthly payments. The motion was heard but no decision was made. Mother sued for two months of support payments (January, February); the district court issued a writ of attachment. Father filed a motion to discharge the writ contending there was no contract. Mother amended her complaint to include the missed March payment. The district court issued another writ of attachment. Father again filed a motion to discharge the writ. The district court denied Father's motions. Before Father filed the appeal, Mother filed another action, for the intervening three months of support payments (April, May, June), which Father had not paid. Again, the district court issued a writ of attachment. Father appealed.

6

¶15 Father argued mother should not be permitted to bring successive suits for the monthly installments as they become due. *Towne*, 114 Mont. at 25, 132 P.2d at 171-72 (1943) (petition for rehearing). This Court rejected his argument. Relying on the substantively identical predecessor to § 28-2-1501, MCA, this Court held that the mother was entitled to maintain successive actions on the contract.[3] *Towne*, 114 Mont. at 25, 132 P.2d at 172 (1943) (petition for rehearing). LMM attempts to distinguish this case as "not a contract case." We disagree. The Court in *Towne* acknowledged that the parties' rights rested solely on the contract. *Towne*, 114 Mont. at 6-7, 132 P.2d at 163-64 (rejecting the father's argument that "his obligation to pay . . . is not based upon a contract but the decree of the court in the divorce action.")

¶16 In *Green,* a landlord leased a ranch to a tenant. 140 Mont. at 415, 372 P.2d at 429. Under the four-year contract, the landlord was to provide six hundred head of steer; the tenant was to tend the herd and pay annual rent. *Green,* 140 Mont. at 415-16, 372 P.2d at 429. The agreement provided that, following a fall sale of the animals, the parties would split the profits. *Green,* 140 Mont. at 416, 372 P.2d at 429. After the first year, the parties' agreement fell apart. The landlord made it known that he wished the tenant off the land and refused to operate under the terms of the contract. The tenant sued for lost profits for year two, and shortly thereafter sued again for the third year's lost profits. *Green,* 140 Mont. at 417, 372 P.2d at 430. The district court ruled in favor of the tenant.

---

[3] R.C.M. 1921 § 9819.

¶17    On appeal, the landlord argued that the tenant had elected to treat the contract as breached and sue for damages.  Therefore, the tenant could not then split the contract up and sue for each year's damages.  This Court rejected that argument, again finding that the identical predecessor to § 28-2-1501, MCA, was controlling.[4]  The parties' contract "contained several divisible parts.  It ran for four successive years and each year . . . was a separate phase to be separately performed and settled." *Green,* 140 Mont. at 425, 372 P.2d at 434.  This Court held successive actions could be maintained for each year of the parties' contract.  *Green,* 140 Mont. at 425, 372 P.2d at 434.

¶18    Here, Boyne sued LMM twice, once after the first seven years' depreciation payments were not made, and again after the final three years' depreciation payments were not made.  While the parties continued all other obligations under the contract, the issues are not identical.  Each missed payment was for a different period of time.  Further, Boyne's rights under § 28-2-1501, MCA, as applied in *Towne* and *Greene* to bring successive actions on the same contract, defeats LMM's defense of claim preclusion.

¶19    LMM clearly owes Boyne under the contract.  The contract was never terminated and nothing required Boyne to sue for all damages under the contract in the first litigation.

**CONCLUSION**

¶20    The District Court's conclusions of law regarding this contract were correct.  LMM's argument fails to establish that Boyne's claims were barred by considerations of claim preclusion.  Because we have determined that the application of § 28-2-1501, MCA,

---

[4] R.C.M. 1947 § 93-8704.

is dispositive of this case, we will not address LMM's other arguments on appeal. Further, under the terms of the contract and the ruling by this Court in *Boyne 1*, Boyne is entitled to reasonable attorney's fees it incurred on appeal. We remand to District Court for the determination of attorney's fees.

¶21 Affirmed.

/S/ MIKE McGRATH

We Concur:

/S/ JAMES JEREMIAH SHEA
/S/ LAURIE McKINNON
/S/ MICHAEL E WHEAT
/S/ DIRK M. SANDEFUR

Justice Laurie McKinnon, concurring.

¶22 I agree with the Court's decision and analysis regarding § 28-2-1501, MCA, and its application to these proceedings. However, I feel compelled to add what appears to be obvious, but nonetheless overlooked; that LMM may not, as the breaching party, choose the remedy for its breach. An anticipatory breach gives the *wronged* party, in these proceedings Boyne, the right to either rescind the contract, treat the repudiation as a breach, or to bring suit after the time for performance has passed. Anticipatory repudiation allows, but does not require, a wronged party to bring a breach of contract action before the time the opposing party's performance is due.

9

¶23 We held in *STC, Inc. v. City of Billings*, 168 Mont. 364, 370-71, 543 P.3d 374, 377 (1975), that the legal effect of an anticipatory breach is described in 17A C.J.S. Contracts § 472(1), pp. 653-55, by this language:

> Where a party bound by an executory contract repudiates or renounces his obligation before the time for performance the promisee has according to the great weight of authority, an option to treat the contract as ended, as far as further performance is concerned, and to maintain an action at once for damages occasioned by such anticipatory breach, repudiation, or renunciation, even in the absence from the contract of a specific provision authorizing the maintenance of an action or the declaring of a forfeiture.

¶24 Accordingly, I would, in addition to the Court's analysis of § 28-2-1501, MCA, definitively reject LMM's attempt to choose the remedy Boyne may elect for LMM's anticipatory breach. The remedy for anticipatory breach is at the option of the wronged party, which is not only consistent with our own precedent, but the universal rule and weight of authority from other jurisdictions.

¶25 For these reasons, I concur.

/S/ LAURIE McKINNON

10