FILED

01/16/2018

*Ed Smith*
CLERK OF THE SUPREME COURT
STATE OF MONTANA

Case Number: DA 16-0534

DA 16-0534

IN THE SUPREME COURT OF THE STATE OF MONTANA

2018 MT 8

_____

THOMAS MICHAEL HUDSON and
REBECCA ANNE HUDSON,

      Plaintiffs and Appellants,

  v.

DENNIS R. IRWIN, IRWIN ENTERPRISES, LLC,
and WEST FORK LODGE, INC.,

      Defendants and Appellees.

_____

APPEAL FROM:    District Court of the Twenty-First Judicial District,
                   In and For the County of Ravalli, Cause No. DV-12-250
                   Honorable Jeffrey H. Langton, Presiding Judge

COUNSEL OF RECORD:

        For Appellants:

            Robert T. Bell, Reep, Bell, Laird & Jasper, P.C., Missoula, Montana

        For Appellees:

            Martin S. King, Worden Thane P.C., Missoula, Montana

_____

Submitted on Briefs:  October 25, 2017

Decided:  January 8, 2018

Filed:

_____
                        Clerk

Chief Justice Mike McGrath delivered the Opinion of the Court.

¶1    This is an appeal from a Twenty-First Judicial District Court order granting summary judgment in favor of Dennis Irwin, Irwin Enterprises, LLC, and West Fork Lodge, Inc. (collectively Irwin), concluding that Thomas and Rebecca Hudson (Hudsons) do not have an easement to access a nearby airstrip. We affirm.

¶2    We restate the issues on appeal as follows:[1]

*1. Whether the District Court erred when it concluded that the Hudsons were not entitled to access an easement located on the Irwin Property.*

*2. Whether the owner of real property who is establishing a general plan development can create an easement upon the owner's own parcel.*

*3. Whether the District Court's prevailing party award of attorney fees should be vacated.*

## PROCEDURAL AND FACTUAL BACKGROUND

¶3    The Hudsons own real property located in Ravalli County, Montana, known as "Parcel A of Certificate of Survey No. 490742-R, Section 4, Township 1 North, Range 21 West, P.M.M., Ravalli County, Montana" (Hudson Property). Irwin owns real property located in Ravalli County, Montana, known as "A tract of land located in and being a portion of Section 4, Township 1 North, Range 21 West, P.M.M., Ravalli County, Montana, and being more particularly described as Parcel B, Certificate of Survey No.

---

[1] Because the issues we address are dispositive, we do not reach the other issues raised by appellant on appeal.

490742-R" (Irwin Property).[2] Before being subdivided by a previous owner, the Hudson and Irwin Properties were one in the same.

¶4 A privately owned, public use airport (Airport) is located on the Irwin Property. The Airport was founded by Roy Shook for United States Forest Service purposes and was operated from a building referred to as "West Fork Lodge." In 1976, Certificate of Survey (COS) 1075 was recorded, depicting eleven parcels of land. The airstrip to the Airport is located within Parcel 7 of COS 1075. West Fork Lodge is located outside of COS 1075 on COS 719 (West Fork Lodge Property).

¶5 Shook sold the land north of the airstrip to Harold Mildenberger and the airstrip and West Fork Lodge to David Monks. In 1980, Monks conveyed the West Fork Lodge Property to Shook Mountain Resort. In 1981, Monks conveyed Parcel 7 of COS 1075 to Shook Mountain Resort. Also in 1981, an easement (Easement Grant) was executed and recorded, which described an airport known as the Wilcox-Shook Mountain Resort Airport that exists across portions of Parcels 4, 5, and 7 of COS 1075. The Easement Grant stated that, as owners of real property including Parcels 4, 5, and 7 COS 1075, Richard and Bette Lou Gamegan and Wayne A. and Betty M. Wilcox granted

> to the other Grantors, and to the owner of each parcel, Parcels 1 through 13, inclusive, Certificate of Survey No. 1075, records of Ravalli County, Montana: a non-exclusive easement for use of the easement premises and the air over same as an airport for the ingress, egress, and tie-down of one (1) airplane only for each of the above-described parcels. This grant is appurtenant to each of said parcels.

---

[2] *See* Figure 1.

3

¶6     In 1990, Shook Mountain Resort conveyed two tracts of land to Vaughn and Linda Davis:  West Fork Lodge Property located on COS 719 and Parcel 7 of COS 1075.  That same year, the Davises conveyed the same parcels to Helmet and Margot Syring.  In 1992, the Syrings conveyed these parcels to Nancy Magee (Magee).  In 1996, Magee recorded COS 5379-R, in which the boundary lines of Parcel 7 of COS 1075 (Original Parcel 7) and West Fork Lodge Property located within COS 719 were relocated.  The boundary line relocation reconfigured parcels labeled as Parcels 7A and 7B.  The relocation also combined West Fork Lodge Property with that portion of Original Parcel 7 on which the airstrip and tie down area are located to form Parcel 7B.  The remainder of Original Parcel 7 became known as Parcel 7A.  The only reference on COS 5379-R to the Airport is a designation of an "Airstrip Easement" that depicts a small triangle of 0.05 acres of land in Parcel 7A located at the north end of the airstrip.

¶7     In 1997, Magee conveyed Parcel 7B to Paul Raddatz.  In 1999, Raddatz conveyed Parcel 7B back to Magee.  In 2000, Magee recorded the deed of her completed purchase from the Syrings of Original Parcel 7 and West Fork Lodge Property.  Also in 2000, Magee conveyed Parcel 7B to West Fork Billabong, LLC (West Fork Billabong).  In 2001, Magee conveyed Parcel 7A to Richard Magee and Nancy Magee.

¶8     In 2002, the Magees recorded COS 490742-R, in which a boundary line adjustment resulted in the transfer of the 0.05-acre triangle at the north edge of the airstrip from Parcel 7A to Parcel 7B.  Parcel 7A was renamed Parcel A, and Parcel 7B was renamed Parcel B.

¶9    In 2005, West Fork Billabong conveyed Parcel B to Irwin. In June 2007, the Magees conveyed Parcel A to ECI # 147, LLC, an entity used by the Hudsons to facilitate a like-kind exchange of property. Also in 2007, ECI # 147, LLC, conveyed Parcel A to the Hudsons. The Hudsons and Irwin now own property adjacent to one another.

¶10    On June 1, 2012, the Hudsons filed a Complaint for Declaratory, Quiet Title, Injunctive and Other Relief against Irwin. The Hudsons argue they are entitled to access and use the airstrip from their property pursuant to the terms of the 1981 Easement Grant. Irwin alleges that the Hudson Property is not benefitted under any easement to use the airstrip or any portion of Irwin's property.

¶11    In its Amended Opinion and Order dated April 21, 2016, the Twenty-First Judicial District Court concluded that the Hudson Property is not benefitted by an easement that would give the Hudsons access to an airstrip. The District Court granted Irwin's Motion for Partial Summary Judgment for declaratory judgment, quiet title, and injunctive relief regarding Irwin's counterclaims and claims made in the Amended Complaint. The District Court denied the Hudsons' Motion for Partial Summary Judgment, holding that Parcel A is not benefitted under the Easement Grant. The District Court also denied the Hudsons' Motion for Additional Discovery Under Rule 56(f), holding that no further discovery on their alternative prescriptive easement claim is allowed. On July 26, 2016, the District Court awarded Irwin $53,385.08 in attorney fees and costs. Hudsons appeal.

**STANDARD OF REVIEW**

¶12    This Court reviews a grant or denial of summary judgment de novo, applying the same criteria of M. R. Civ. P. 56 as a district court. *Lone Moose Meadows, LLC v. Boyne*

5

*USA, Inc.*, 2017 MT 142, ¶ 7, 387 Mont. 507, 396 P.3d 128.  Pursuant to M. R. Civ. P. 56, summary judgment "shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." *Lone Moose Meadows*, ¶ 8.  We review conclusions of law for correctness and the district court's findings of fact to determine if they are clearly erroneous.  *Lone Moose Meadows*, ¶ 7.  "We will affirm the district court when it reaches the right result, even if it reaches the right result for the wrong reason."  *Talbot v. WMK-Davis, LLC*, 2016 MT 247, ¶ 6, 385 Mont. 109, 380 P.3d 823.

## DISCUSSION

¶13  *1. Whether the District Court erred when it concluded that the Hudsons were not entitled to access an easement located on the Irwin Property.*

¶14  The District Court held that "in the absence of an express reservation of an easement to use the Airport in favor of Parcel 7A, Parcel 7A no longer retained any benefit or right under the Easement Grant."  Magee failed to reserve an easement over Parcel 7B in favor of Parcel 7A prior to conveying Parcel 7B to West Fork Billabong in 2000, extinguishing any right the Hudsons would have had to access an easement on the Irwin Property.  We affirm the District Court's decision, but rely on alternate grounds.

¶15  The rules of contract interpretation govern the construction of a writing granting an interest in real property.  *Broadwater Dev., L.L.C. v. Nelson*, 2009 MT 317, ¶ 19, 352 Mont. 401, 219 P.3d 492 (citing *Van Hook v. Jennings*, 1999 MT 198, ¶¶ 10-12, 295 Mont. 409, 983 P.2d 995; *Mularoni v. Bing*, 2001 MT 215, ¶ 32, 306 Mont. 405, 34 P.3d

6

497; *Mary J. Baker Revocable Trust v. Cenex Harvest States, Coops., Inc.*, 2007 MT 159, ¶ 18, 338 Mont. 41, 164 P.3d 851; *Wills Cattle Co. v. Shaw*, 2007 MT 191, ¶ 19, 338 Mont. 351, 167 P.3d 397; § 70-1-513, MCA). When interpreting the language of a contract, one must consider the intention of the parties at the time of contracting. Section 28-3-301, MCA. If possible, the intention of the parties should be ascertained from the writing alone. Section 28-3-303, MCA.

¶16 The 1981 Easement Grant provided each parcel within the general plan development an easement to access the airstrip.[3] The Easement Grant states that the owner of each parcel has "a non-exclusive easement for use of the easement premises and the air over same as an airport for the ingress, egress and tie-down of one (1) airplane only . . . ." Pursuant to the Easement Grant language, each parcel was granted an easement to access the airstrip for one airplane only. After Magee recorded COS 490742-R and adjusted a boundary line in 2002, the single airplane easement was located on Parcel B rather than Parcel A. Magee's subdivision of Original Parcel 7 in 1996 and later conveyances of parcels A and B did not reserve an easement benefitting Parcel A, and significantly it did not grant the easement now on Parcel B to benefit Parcel A. Consequently, future owners of Parcel A do not have an airplane easement. Thus, the Hudsons are not entitled to access the airstrip via their own property or the Irwin Property. Parcel A is not benefitted under the Easement Grant. Holding otherwise would

---

[3] Because the parcels were larger than twenty acres in size when the development was created in 1976, the development did not have to comply with the review requirements of the Montana Subdivision and Platting Act at that time. Section 76-3-101, MCA. Developments such as the one in this case are now generally considered to be "planned unit developments." Section 76-3-103(11), MCA.

permit more than one airplane to use the airstrip. The writing alone shows that the parties intended to grant each parcel in the development an easement for one airplane only. The decision of the District Court is affirmed.

¶17    2.    *Whether the owner of real property who is establishing a general plan development can create an easement upon the owner's own parcel.*

¶18    The District Court held that "A landowner cannot hold an easement in his or her own land," citing to *Broadwater Dev., LLC, v. Nelson*, 2009 MT 317, ¶ 36, 352 Mont. 401, 219 P.3d 492. *Broadwater* holds that "If the owner of two parcels attempts to create an express easement over one of the parcels in favor of the other, the purported interest is a nullity; at most, the servitude exists only momentarily before merging into the fee." *Broadwater*, ¶ 36. The *Restatement (Third) of Property: Servitudes* § 7.5 (2000) (Restatement) supports the holding in Broadwater and states: "A servitude is terminated when all the benefits and burdens come into a single ownership. Transfer of a previously benefited or burdened parcel into separate ownership does not revive a servitude terminated under the rule of this section. Revival requires re-creation under the rules stated in Chapter 2." However, a comment to the Restatement recognizes an exception to the general rule applied in *Broadwater*:

> *Application to property subject to general plan of development.* Because merger takes place only when all the benefits and burdens of the servitude come into a single ownership, subdivision covenants and servitudes in other developments with reciprocal servitudes are rarely terminated by merger. Since each lot, unit, or parcel enjoys the benefit of the servitudes imposed on every other property in the development, see § 2.14(a), the occasion for merger can arise only when the entire development is acquired by a single owner.

*Restatement (Third) of Prop.: Servitudes* § 7.5 cmt. c (2000).

8

¶19    The Restatement defines a general plan development as "a real-estate development or neighborhood in which individually owned lots or units are burdened by a servitude imposed to effectuate a plan of land-use controls for the benefit of the property owners in the development or neighborhood." *Restatement (Third) of Prop.: Servitudes* § 1.7(1) (2000). Although a landowner cannot hold an easement on his or her own land because a "servitude is terminated when all the benefits and burdens come into a single ownership," a landowner who is establishing a general plan development can create an easement upon the landowner's own parcel. *Restatement (Third) of Prop.: Servitudes* § 7.5; cmt. c. Only when every parcel in a general plan development is acquired by a single landowner or entity is an easement or other covenant within that development terminated by merger. *Restatement (Third) of Prop.: Servitudes* § 7.5 cmt. c.

¶20    We agree with the logic noted in the exception in comment c of the Restatement. Clearly, application of the exception complies with the intent and purpose of the development here, which was to provide access to the airstrip for each parcel within the development at that time. Based on the facts of this case, we conclude that the restrictions applied in *Broadwater* are inapplicable to the development here.

¶21    *3. Whether the District Court's prevailing party award of attorney fees should be vacated.*

¶22    The 1981 Easement Grant states that "Any party may enforce this instrument by appropriate action and should he or she prevail in such litigation, he or she shall recover as part of his or her costs a reasonable attorney's fee." The Hudsons argue the attorney fees awarded by the District Court in its order dated July 26, 2016, should be vacated if

9

this Court reverses the District Court's decision regarding the Hudsons' easement rights. As the prevailing party in this appeal, Irwin is entitled to reasonable attorney fees. We affirm the District Court's decision to award attorney fees to Irwin. Irwin also has a contractual right to attorney fees incurred on this appeal, and we remand for further proceedings to determine the amount of Irwin's attorney fees.

## CONCLUSION

¶23     While the District Court was correct in deciding that the Hudsons are not entitled to access an easement on the Irwin Property, we affirm for a different reason. We affirm the District Court's award of attorney fees to Irwin and hold that Irwin is entitled to attorney fees incurred on appeal. This matter is remanded to the District Court for a determination of the amount of attorney fees.


/S/ MIKE McGRATH


We Concur:

/S/ JAMES JEREMIAH SHEA
/S/ LAURIE McKINNON
/S/ BETH BAKER
/S/ DIRK M. SANDEFUR



Figure 1                                    Appendix 7

11