FILED

02/27/2018

*Ed Smith*
CLERK OF THE SUPREME COURT
STATE OF MONTANA

Case Number: DA 17-0326

DA 17-0326

IN THE SUPREME COURT OF THE STATE OF MONTANA

2018 MT 30

MICHAEL J. TONN, ANNE L. QUAST, WILLIAM
A. TONN, JR. and CHERYL R. TONN,

        Petitioners and Appellants,

    v.

THE ESTATE OF ELIZABETH SYLVIS, deceased,
DANIEL SYLVIS, and KATIE ATKINSON,

        Respondents and Appellees.

APPEAL FROM:    District Court of the Sixteenth Judicial District,
                 In and For the County of Custer, Cause No. DV 2014-83
                 Honorable Michael B. Hayworth, Presiding Judge

COUNSEL OF RECORD:

        For Appellants:

                John R. Christensen, Timothy A. Filz, Joseph L. Breitenbach, Christensen
                Fulton & Filz, PLLC, Billings, Montana

        For Appellees:

                Susan B. Swimley, Attorney at Law, Bozeman, Montana

                Kellie G. Sironi, Attorney at Law, Billings, Montana

Submitted on Briefs:  December 13, 2017

Decided:  February 27, 2018

Filed:

                             Clerk

Chief Justice Mike McGrath delivered the Opinion of the Court.

¶1 Michael Tonn, Anne Quast, William Tonn, Jr., and Cheryl Tonn, in her capacity as trustee (collectively William Heirs), appeal from a decision by the Sixteenth Judicial District Court granting The Estate of Elizabeth Sylvis, Daniel Sylvis, and Katie Atkinson's motion for summary judgment. We affirm.

¶2 The William Heirs present the following issue for review:

*Whether the District Court erred when it declined to apply Montana's anti-lapse statute (§ 72-2-717(2), MCA) to the Armond W. Tonn Testamentary Trust.*

## PROCEDURAL AND FACTUAL BACKGROUND

¶3 Before passing away in 1982, Armond W. Tonn (Armond) executed his Last Will and Testament, which created two trusts. The first trust was a marital trust to care for Armond's wife, Hjordice, during her life. The second trust was for the benefit of the three children of Armond and Hjordice: William Tonn, Marc Tonn, and Elizabeth Sylvis. The children's trust included the "rest, residue, and remainder" of Armond's estate.

¶4 Hjordice passed away in 1991 without naming beneficiaries to her marital trust, and the principal from the marital trust was added to the children's trust (Trust). The parties agree that the principal in the Trust consists of a one-half interest in a 50,000-acre ranch. The initial trustee for the Trust was Armond's brother, Marcus J. Tonn. When Marcus passed away in 2006, Cheryl Tonn and Elizabeth Sylvis were appointed co-trustees. The Trust grants broad discretion for distributions by the Trustee to each of Armond's children, saying

2

> Payments from income and principal shall be made in accordance with the needs of the beneficiaries and not necessarily equally . . . . It is my intention to give my Trustee unlimited power to invasion of principal if he deems it necessary for the proper support, care and education of any of my children.

¶5 Armond and Hjordice's son, William, passed away in 2001. William was survived by his wife, Cheryl, and three children: William Tonn Jr., Michael Tonn, and Anne Quast. The William Heirs are appellants in this case. When William passed away, there was no distribution of Trust principal to the William Heirs. The trustee began to distribute one-third of the Trust income to the William Heirs after William passed away and two-thirds to Elizabeth a couple years after Marc passed away. Armond and Hjordice's other son, Marc, passed away in 2010. Marc passed away leaving no spouse or children.

¶6 The last surviving of Armond and Hjordice's children was Elizabeth, who passed away in 2016. Elizabeth was survived by two children, Daniel Sylvis and Katie Atkinson (Elizabeth Heirs), who are Appellees in this case.

¶7 Armond's will established an order for when and to whom principal distributions should be made upon the death of his children. The fourth article of Armond's Trust states:

> If any child of mine should predecease me or die during the term of this trust, then one-third of the principal of the trust as it then exists shall be distributed unto my deceased child's living descendants by right of representation.

> Upon the death of the next child, then one-half of the principal of the trust as it then exists shall be distributed unto said deceased child's living descendants by right of representation.

Upon the death of my last child this trust shall terminate and all of the trust property, including any undistributed income, shall be distributed to the living descendants of said deceased child by right of representation.

If any child of mine should die without leaving living descendants, then the share of my deceased child shall be held in trust as herein provided for my surviving children.

¶8 On February 1, 2012, Anne Quast became aware of and concerned about the unequal Trust income distributions between the William Heirs and Elizabeth Heirs. On August 19, 2014, the William Heirs filed an initial petition, claiming that in addition to the one-third William Tonn share, the William Heirs are entitled to "one-half of the principal and income attributable to [Marc's] share of the Trust." In their Third Amended Verified Petition for Declaratory Judgment, the William Heirs asserted four claims: (1) declaratory judgment—Marc Tonn share; (2) declaratory judgment—William Tonn share; (3) breach of trust; and (4) declaratory judgment regarding trustee.

¶9 On April 20, 2017, the District Court granted Elizabeth Heirs summary judgment and awarded them Marc's share of the Trust. The William Heirs were awarded one-third of the value of the Trust. The William Heirs appeal their first claim relating to Marc's share of the trust.

**STANDARD OF REVIEW**

¶10 We review a district court's grant of summary judgment de novo, using the same standards applied by the district court under M. R. Civ. P. 56. *Capital One, NA v. Guthrie*, 2017 MT 75, ¶ 11, 387 Mont. 147, 392 P.3d 158. Summary judgment is appropriate if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any

4

material fact and that the moving party is entitled to a judgment as a matter of law. *Capital One*, ¶ 11 (citing M. R. Civ. P. 56(c)(3)). We review conclusions of law for correctness and the district court's findings of fact to determine if they are clearly erroneous. *Lone Moose Meadows, LLC v. Boyne USA, Inc.*, 2017 MT 142, ¶ 7, 387 Mont. 507, 396 P.3d 128.

## DISCUSSION

¶11 *Whether the District Court erred when it declined to apply Montana's anti-lapse statute (§ 72-2-717(2), MCA) to the Armond W. Tonn Testamentary Trust.*

¶12 Montana's anti-lapse statute applies when a beneficiary of a future interest fails to survive the distribution date. Section 72-2-717(2), MCA. When applied, the anti-lapse statute substitutes the deceased beneficiary with his or her surviving descendants. Section 72-2-717(2)(a), MCA. A substitute gift is created in the surviving descendants who take the property that the deceased beneficiary would have received had he or she survived the distribution date. Section 72-2-717(2)(a), MCA. However, by its terms, the anti-lapse statute only applies to testamentary documents "[i]n the absence of a finding of contrary intention . . . ." Section 72-2-711, MCA. The statute further states that "For the purposes of 72-2-711, words of survivorship attached to a future interest are not, in the absence of additional evidence, a sufficient indication of an intent contrary to the application of this section." Section 72-2-717(2)(c), MCA. When determining a testator's intent, this Court will consider all provisions of the trust as a whole. *In re Estate of Berthot*, 2002 MT 277, ¶ 35, 312 Mont. 366, 59 P.3d 1080 (citing *In re George Trust*, 253 Mont. 341, 344, 834 P.2d 1378, 1380 (1992)).

5

¶13 The William Heirs argue the District Court erred when it failed to apply the anti-lapse statute. They argue that although William failed to survive the distribution date, he held a future one-half interest in Marc's share of the principal of the Trust, which should be distributed to the William Heirs now. The William Heirs rely on factually similar cases in which other courts have applied the anti-lapse statute: *In re Nass's Estate*, 182 A. 401 (Penn. 1936) and *Cox v. Forristall*, 640 P.2d 878 (Kan. App. 1982). However, this Court has held that the basic principle of trust law is to carry out the testator's intent. *Berthot*, ¶ 35. This Court will not "second guess the intentions of the parties when the language of the [trust] instrument is clear." *Wyman v. Wyman*, 208 Mont. 57, 63, 676 P.2d 181, 184 (1984).

¶14 Considering the Trust provisions as a whole, we conclude that Armond's intent regarding distribution was clear and the anti-lapse statute does not apply. Armond set a specific order of distribution in the Trust should any of his children predecease him or pass away during the term of the Trust. William was the first child of Armond to pass away. Applying the clear language of the Trust's fourth article, the William Heirs were entitled to distribution of William's one-third share of Armond's trust at that time. If Marc had passed away with children or a spouse, they would have been entitled to the second distribution of Trust principal. According to the Trust, Marc's descendants would have received half of the remaining Trust principal upon Marc's death. However, the Trust directed Marc's share to be held in trust for Armond's surviving children since Marc passed away without leaving living descendants. The last survivor of Armond's children was Elizabeth. Consequently, she was entitled to Marc's share along with her

6

own. The language of Armond's order of distribution is clear on this point. *See In re Estate of McClure*, 2016 MT 253, ¶ 21, 385 Mont. 130, 381 P.3d 566 (holding that "we construe the [trust agreement's] words in their ordinary and grammatical sense, absent a clear opposite intention").

¶15 Moreover, the Trust gave the trustees discretion when making payments to Armond's children. The trustee was directed to make payments according to the needs of Armond's children. The trustee was even allowed to reduce or suspend payments entirely if he or she thought it was necessary. Armond did not intend for distributions to be necessarily equal among his three children.

¶16 Nor did Armond intend for distributions to be equal among his grandchildren. Armond followed all but one provision of the Trust's fourth article with "by right of representation." As illustrated above, upon the death of Armond's first child, one-third of the Trust principal was to be distributed to the deceased child's living descendants by right of representation. One-half of the remaining Trust principal was to be distributed to the second deceased child's living descendants by right of representation. However, the "by right of representation" language did not follow the last provision. Instead, it read "If any child of mine should die without leaving living descendants, then the share of my deceased child shall be held in trust as herein provided for my *surviving children*" (emphasis added). The William Heirs were excluded as Marc's heirs by the specific terms of the Trust.

**CONCLUSION**

¶17   The District Court was correct that Montana's anti-lapse statute did not apply to the Armond W. Tonn Testamentary Trust. The Trust document clearly provides for a contrary distribution. Armond did not intend for his grandchildren to be treated equally. Armond specifically listed the order in which he wanted distributions to take place and the William Heirs were not included in the distribution of Marc's one-third share of the Trust.

¶18   Affirmed.

/S/ MIKE McGRATH

We Concur:

/S/ DIRK M. SANDEFUR
/S/ LAURIE McKINNON
/S/ BETH BAKER
/S/ JIM RICE

8