FILED

12/20/2022

Bowen Greenwood
CLERK OF THE SUPREME COURT
STATE OF MONTANA

Case Number: DA 22-0055

DA 22-0055

IN THE SUPREME COURT OF THE STATE OF MONTANA

2022 MT 247N

DENNIS DEE MCDONALD as a general
partner, managing partner and limited
partner of the OPEN SPEAR RANCH FAMILY
LIMITED PARTNERSHIP,

        Counter-Defendant and Appellant,

   v.

SHARON MCDONALD, as a general partner,
managing partner and limited partner,
KELLY MCDONALD FRASER, as a limited partner,
COURTNEY MCDONALD, as a limited partner;
and CASEY MCDONALD, as a limited partner,
OPEN SPEAR RANCH FAMILY LIMITED
PARTNERSHIP,

        Counterclaimants and Appellees.

APPEAL FROM:    District Court of the Sixth Judicial District,
                    In and For the County of Sweet Grass, Cause No. DV-2014-19
                    Honorable Brenda R. Gilbert, Presiding Judge

COUNSEL OF RECORD:

        For Appellant:

                Hertha L. Lund, Lund Law, PLLC, Bozeman, Montana

                David B. Gallik, Gallik Law Office, PLLC, Helena, Montana

        For Appellee Sharon McDonald:

                Jim Lippert, Jim Lippert Attorney at Law, P.C., Big Timber, Montana

        For Appellees McDonald Children:

                Rodd A. Hamman, Alex W. Hamman, Calton Hamman & Wolff, P.C.,
                Billings, Montana

Submitted on Briefs:  November 16, 2022

Decided:  December 20, 2022

Filed:

_____
Clerk

Justice Laurie McKinnon delivered the Opinion of the Court

¶1 Pursuant to Section I, Paragraph 3(c), Montana Supreme Court Internal Operating Rules, this case is decided by memorandum opinion and shall not be cited and does not serve as precedent. Its case title, cause number, and disposition shall be included in this Court's quarterly list of noncitable cases published in the Pacific Reporter and Montana Reports.

¶2 Dennis Dee McDonald (Dennis) appeals numerous orders from the Sixth Judicial District Court, Sweet Grass County, granting dissolution of the Open Spear Ranch Family Limited Partnership (Partnership).

¶3 Dennis and Sharon McDonald (Sharon) created the Partnership on December 29, 1997, when they, together with their four adult children, signed the Certificate and Agreement of the Open Spear Ranch Partnership (Partnership Agreement). Their fourth child is now deceased. The Partnership was created to minimize tax consequences and to keep the assets within the family. Dennis and Sharon were general partners, managing partners and limited partners and the Children were limited partners. Sharon and Dennis each retained a 1% interest as general partners.

¶4 Sharon and Dennis maintained a common law marriage until Sharon filed for dissolution on July 14, 2014. The couple entered into a Property Settlement Agreement (Marital Agreement), which the District Court reviewed and approved along with the Decree of Dissolution. Both documents reference the Partnership. The parties agreed that the division of Partnership assets would be handled in a separate proceeding.

3

¶5     On July 2, 2014, Dennis filed a Complaint to dissolve the Partnership after having a fight with an Open Spear Ranch (OSR) ranch employee. Dennis also maintained that Sharon and one of the Children abandoned OSR. In his Complaint, which named Sharon, the Children and the ranch employee, Dennis alleged that "there was no hope of reconciliation of the General Partners' business relationship" and "[g]iven the fractured business relationship of the General Partners, and that neither can act without the consent of the other, it is not reasonably practicable to carry on the Partnership activities in conformity with the Partnership Agreement."

¶6     Sharon filed an Answer and Counterclaim on August 14, 2014, also seeking dissolution of the Partnership but alleging that (1) Dennis failed to communicate with her as general partner and managing partner; (2) Dennis used funds from the Partnership for personal use; and (3) she and Dennis have a "fractured relationship."

¶7     Dennis returned to OSR on September 1, 2014, after recovering from the fight with the ranch employee. He testified that, upon his return, he discovered that the Partnership bank account had been depleted from $183,148.48 to $8,508.00 within sixty days, the hay had not been cut, and livestock had not been attended to. He thus "reassumed responsibility for the ranch's day-to-day operations as he always had and continues to do." He also alleges that Sharon and the Children never returned to OSR.

¶8     On April 3, 2015, Dennis filed a Motion to Dismiss his Complaint claiming that he no longer sought dissolution of the Partnership. Sharon and the Children objected. The District Court granted Dennis's Motion on May 1, 2015, reasoning that:

4

> The language of rule 41(a)(2) M. R. Civ. P. is plain and clear. The motion for dismissal of Complaint is granted and the counterclaims may be adjudicated independently. For public policy reasons, a party should be permitted to change his position and retreat from litigation, particularly where the legal rights of other parties will not be prejudiced.

Litigation over the Partnership dissolution nonetheless continued based on Sharon's and the Children's counterclaims.

¶9 Dennis filed a Motion for Exclusive Control on October 7, 2015, to manage OSR by himself. On October 30, 2015, Dennis requested an ex parte Temporary Order of Protection to keep Sharon and the Children from entering OSR. He claimed that Sharon conspired to have him killed and that two of the Children removed OSR property and interfered with OSR operations. In his request, he also alleged that a ranch employee attacked him.

¶10 Next, on November 25, 2015, Dennis filed a "Motion to Amend his Complaint" to assert a claim for "rescission" of gifts to the Children. The gifts were the limited Partnership interests gifted to the Children during 2011 to 2014, which totaled 48%. Sharon and the Children each objected to the Motion. The District Court denied the Motion to Rescind on March 16, 2016, stating that the claim was "futile" and "procedurally defective" because Dennis had previously requested that his Complaint be dismissed, and the gifts were completed and not subject to rescission. The District Court also ordered that any check over $3,000 must be co-signed by Dennis and Sharon and established duties and obligations for Dennis and Sharon to follow to run OSR.

¶11 The Children filed a Motion for Partial Summary Judgment on May 26, 2016, to affirm the Partnership percentages of 16% for each living child, 26% for Dennis, and 26%

5

for Sharon. The following day, Sharon disclosed Jack Wicks (Wicks) as her valuation expert. She also requested that Wicks be appointed special master under M. R. Civ. P. 53 for purposes of distributing the Partnership assets. Dennis objected to the appointment of Wicks, arguing that Wicks had a conflict of interest because he was both Sharon's disclosed expert and special master. The District Court granted the Children's Motion on November 29, 2016, confirming that the interests in the Partnership were as stated in the Children's Motion.

¶12 On June 17, 2016, Dennis filed a Motion for Summary Judgment contending that the Partnership should not be dissolved because Dennis was successfully operating OSR "per the Agreement and for the children's benefit." On November 19, 2016, the District Court denied Dennis's Motion and determined that the Partnership be dissolved. The District Court based its determination on the marital divorce decree, Dennis's conduct in operating OSR, and the fractious relationships in the family's history. Following its Order, the District Court appointed Wicks as special master to determine whether an in-kind distribution of Partnership assets, in lieu of a cash liquidation, was practicable.

¶13 On August 9, 2016, the District Court conducted a show cause hearing because Sharon alleged that Dennis was not complying with the March 16, 2016 Order. Sharon testified that Dennis had commingled Partnership funds with his personal funds, failed to provide Sharon with photographs and documents that would allow her to complete the duties assigned to her by the District Court, that Dennis attempted to control the Partnership website Sharon was ordered to maintain, and that Dennis did not provide information to the Partnership's Certified Public Accountant (CPA) to facilitate timely preparation of the

6

Partnership tax returns. The District Court issued a Decision and Order on Sharon's Motion on September 9, 2016, concluding, "1. Dennis's practice of depositing Partnership funds in his personal account was improper as a matter of law; 2. Dennis breached the terms of the district court's March 16, 2016 Order by failing to provide Sharon with numerous business records." The District Court ordered that Dennis provide Sharon with photographs and documents required for Sharon to complete the duties assigned to her by the court; provide Sharon with documentation that would allow her to oversee the Partnership checking account; and that Dennis reimburse the Partnership checking account in the amount he commingled, which was determined to be $127,759.01.

¶14 On January 9, 2018, Wicks filed his revised Special Master's Report allocating 26% of the assets to Dennis and 74% to Sharon and the Children. Dennis filed his objections on January 19, 2018.[1] From June 20 to June 22, 2018, the District Court held a Rule 53 hearing[2] and considered Dennis's objections to the revised Special Master's Report. During the hearing, Wicks testified that he did not take into consideration the tax ramifications concerning capital contributions made by the parties, that he had not read the Partnership Agreement, and that he was unaware any of the parties made capital contributions. Dennis's expert witness, Jim Winchell, CPA, testified that an unequal

---

[1] Dennis had also requested, on February 20, 2018, a hearing regarding dissolution of the Partnership, despite the District Court having previously determined it should be dissolved. Dennis argued he was denied an evidentiary hearing to offer evidence in support of not dissolving the Partnership. The District Court held a hearing on October 1, 2018, and on January 23, 2019, confirmed its previous decision that it was proper to dissolve the Partnership.

[2] M. R. Civ. P. Rule 53(d)(2) provides, in pertinent part: "[a]fter hearing, the court may adopt the report, modify it, or reject it in whole or in part, receive further evidence, or recommit it with instructions."

in-kind division of classes of property would create tax consequences. The District Court ruled on Dennis's objections on March 26, 2020, adopting the Special Master's Report of a 26%-74% in-kind distribution. The District Court did not adjust for tax consequences or adjust for Dennis's contributions from his capital account at this time.

¶15 On November 16, 2020, the District Court entered an Interim Order which required an updated Special Master's Report that addressed outstanding valuations of the parties' property. This Order appointed Wicks to complete another Special Master's Report. Wicks had retired so his associate, Scott Crosby (Crosby), performed the report instead. Crosby's report was very similar to Wicks's previous report, but with some revised valuations. Dennis filed objections on October 12, 2021 to the Updated Report of Special Master Crosby. The District Court held a hearing on November 23, 2021. On January 28, 2022, the District Court adopted the Updated Report of Special Master Crosby, with a few exceptions, and issued a final comprehensive order setting forth its findings of fact and conclusions of law.

¶16 Dennis appeals and raises the following issues, some of which we restate: Did the court err in enforcing the Partnership Agreement when it ordered dissolution; was the District Court's determination of partnership percentages correct as a matter of law and should distribution of assets in accordance with these percentages be affirmed; should this Court affirm the appointment of the special masters; and whether the court erred in its distribution of the equipment, art, and cash assets of the partnership.

¶17 The construction and interpretation of a written agreement are questions of law that we review for correctness. *Ophus v. Fritz*, 2000 MT 251, ¶ 19, 301 Mont. 447, 11 P.3d

8

1192. Whether an ambiguity exists in a contract is also a question of law reviewed for correctness. *Doble v. Bernhard*, 1998 MT 124, ¶ 19, 289 Mont. 80, 959 P.2d 488. We review de novo a district court's grant or denial of summary judgment, applying the same criteria of M. R. Civ. P. 56 as a district court. *Pilgeram v. GreenPoint Mortg. Funding, Inc.*, 2013 MT 354, ¶ 9, 373 Mont. 1, 313 P.3d 839 (citation omitted). We review a district court's conclusions of law to determine whether they are correct and its findings of fact to determine whether they are clearly erroneous. *Pilgeram*, ¶ 9. We review the appointment of a special master for abuse of discretion. *Pankratz Farms, Inc. v. Pankratz*, 2004 MT 180, ¶ 81, 322 Mont. 133, 95 P.3d 671.

¶18 First, Dennis argues that the District Court erred when it ordered that the Partnership be dissolved. He contends that the District Court should have followed the Partnership Agreement, without considering the Marital Agreement because the Partnership constitutes a business entity rather than marital property. He further asserts that the District Court erroneously dissolved the Partnership based on "equitable division" principles that only apply to dissolution matters. He maintains that the Partnership was profitable and requests that we reverse the dissolution of the Partnership or remand for the District Court to follow the language of the Partnership Agreement.

¶19 The Partnership Agreement provides that the Partnership shall be dissolved if "it is not otherwise reasonably practicable to carry on the partnership business in conformity with the partnership agreement." This is consistent also with Montana law. *See* § 35-10-624(5)(c), MCA (A partnership "is dissolved . . . upon judicial decree, issued upon

application by a partner, [when] it is not otherwise reasonably practicable to carry on the partnership business in conformity with the partnership agreement.").

¶20 The District Court dissolved the Partnership based on substantial and sufficient evidence. The evidence shows that Dennis was unwilling to communicate with Sharon—as a general and managing partner—regarding partnership business and that he sought to preempt and eliminate the duties and authority granted to Sharon by the Partnership Agreement. He tried to prevent Sharon and the Children from approaching Partnership property by rescinding gifts of limited Partnership interests to the Children and seeking an Order of Protection against Sharon and the Children. Notably, he commingled his personal funds with Partnership funds.

¶21 In addition, Dennis argues that the purpose of the Partnership Agreement (to preserve the assets and keep them within the family) is an adequate basis to reverse the dissolution. Here, however, there was a substantial change in circumstances and positions between the partners, which in themselves undermine the basic purpose of the Partnership. Putting aside the parties' dissolution, Dennis conceded that there was no hope of reconciliation of the partners' business relationships. Sharon and the Children also agreed that dissolution was necessary; Sharon pointed to the marriage dissolution, lack of communication with Dennis, and Dennis's use of partnership funds for personal use as reasons. Dennis asserts that Sharon had an OSR employee pick a fight with him to have him killed, that Sharon attempted to sabotage the Partnership with the 2-signatures check requirement, and that Sharon's involvement with the Partnership "has become intolerable" and will be detrimental to business.

¶22    The District Court held an evidentiary hearing on March 16, 2016, to determine the accuracy of Dennis's allegations. It found that Dennis did not establish reasonable apprehension of bodily injury; that Dennis was not the victim of any assault by any respondent; that a high level of distrust among the partners existed; that daily involvement with the Partnership is impossible because of the lack of trust and hostility between the parties; that both general partners needed to sign Partnership checks greater than $3,000; and that Dennis must transfer all Partnership funds from his personal account to the Partnership account. At a Show Cause hearing following the evidentiary hearing, the District Court found that Dennis failed to follow the District Court's orders: he continued to commingle OSR Partnership funds with his personal funds; he did not provide Sharon with business records; and he failed to cooperate with the Partnership's CPA to file tax returns.

¶23    After the District Court denied Dennis's Motion for Summary Judgment and issued an order dissolving the partnership, the District Court held another evidentiary hearing at Dennis's request to hear testimony from the parties concerning dissolution of the Partnership. Sharon testified that she wanted the Partnership dissolved based on the lack of trust between herself and Dennis; Dennis's commingling of Partnership funds with his personal funds, including credit card payments; his failure to recognize the authority of the District Court; his failure to provide her with his personal bank statements; his failure to individually sign Partnership checks that exceed $3,000; his accusation that Sharon hired an OSR employee to kill him; his accusation that Sharon forged the marriage dissolution; his failure to communicate with her regarding Partnership business matters; his failure to

notify her of potential Partnership income; and his purchase of Partnership equipment without her knowledge or consent. Sharon also updated the District Court that the amount of Partnership checks that Dennis wrote exceeding $3,000, without her signature, totaled over $528,000.

¶24 Article III of the Partnership Agreement establishes the powers of general partners. Most notably, it requires that any decision or act shall be made only upon the approval of the majority interest of general partners. This requires that the general partners—Dennis and Sharon—agree when making decisions. Dennis and Sharon also have equal 1% general partnership interests. The record demonstrates that Dennis and Sharon cannot agree with each other because Dennis has failed to involve Sharon in Partnership matters and has misappropriated Partnership funds. The District Court presided over 7 years of litigation that demonstrate the broken relationship among Dennis, Sharon, and the Children that overcome the partners' abilities to carry on the Partnership. The District Court issued its Findings of Fact and Conclusions of Law based on sufficient and overwhelming evidence that supports dissolving the Partnership.

¶25 Next, Dennis claims the District Court erred when it did not consider his capital accounts and claims Sharon acknowledged them during her testimony. He argues the District Court held that Dennis could not disclose the capital accounts in the Marital Agreement. The record shows otherwise; the District Court offered Dennis the opportunity to disclose his capital account claim, both in his dissolution of marriage and the present case.

¶26 Dennis waived his opportunity to claim ownership of his capital accounts in two ways. First, Dennis knew of his capital account at the time he submitted a Preliminary Declaration of Disclosure (Disclosure) in the marriage dissolution proceedings and failed to disclose ownership or interest in a capital account for the Partnership. *See* § 40-4-252, MCA (preliminary declarations of disclosure must include the identity of all assets, "regardless of the characterization of an asset," in which the declarant has or may have an interest). Pursuant to Article II, § 2.1 of the Partnership Agreement, Dennis's capital account is personal property that is required to be disclosed in the Disclosure. Dennis challenges the District Court's ruling in this regard, claiming that in the Marital Agreement, the parties expressly waived disclosures and agreed to handle the OSR assets in the partnership case. But the Marital Agreement was filed in May 2017, approximately two-and-a-half years after the parties filed their preliminary disclosures. It stated, in the "Waiver of Declaration of Disclosure" provision, that "[e]ach of the parties acknowledge disclosure of all assets and obligations has been made by the other party and hereby waives any declaration of disclosure to be served and filed in this marriage dissolution action." This provision acknowledged the preliminary disclosures and waived only those declarations "to be served and filed"; that is, the final disclosures. Sections 40-4-252; 40-4-253, MCA. The Marital Agreement provided further that it "shall not include any item of property, whether real or personal, tangible or intangible, titled in the name of the Open Spear Ranch Limited Partnership." This provision does not apply to Dennis's alleged $8.5 million capital account, which he claims was his property, not property of OSR.

13

¶27 Second, Dennis failed to object within 30 days when Wicks proposed the in-kind distribution of 26% to Dennis and 74% to Sharon and the Children. It took six months after Wicks proposed the 26-74 in-kind distribution, for Dennis to argue that his capital account was $8.5 million, and Sharon's was $0.

¶28 Here, the District Court reasoned that if the equipment were Dennis's personal property, then he was required to disclose them in the divorce proceeding, and he did not do so. Second, the Partnership tax returns show that the equipment is Partnership property, and the returns listed each partner's capital account consistent with their partnership percentages. The tax returns showed that Dennis did not have $8.5 million in a capital account. Finally, because Dennis never disclosed any of the individual assets in his marital dissolution or in the tax returns, he is estopped from changing his position in this case.

¶29 We agree. Dennis and Sharon settled their divorce case and agreed that any issues of partnership property would be resolved in the partnership proceeding. Dennis attempts to undue roughly 7 years of litigation by claiming rights to capital accounts of the Partnership significantly late in the proceedings. He raises a new claim in this case that he had an $8.5 million capital account and that Sharon's account was $0. The purpose of judicial estoppel is to bind "a party to his or her judicial declarations and preclude[] a party from taking a position inconsistent with previously made declarations in a subsequent action or proceeding." *Kaufman-Harmon v. Kaufman*, 2001 MT 238, ¶ 15, 307 Mont. 45, 36 P.3d 403. Judicial estoppel includes four elements, which all must be satisfied: "(1) the estopped party had knowledge of the facts at the time he took the original position; (2) the estopped party succeeded in maintaining the original position; (3) the position presently

14

taken is inconsistent with the original position; and (4) the original position misled the adverse party so that allowing the estopped party to change its position would injuriously affect the adverse party." *Gibbs v. Altenhofen*, 2014 MT 200, ¶ 17, 376 Mont. 61, 330 P.3d 458.

¶30 The District Court correctly found that the four elements of judicial estoppel were met. Dennis knew of his capital accounts when the Partnership tax returns were filed. He succeeded in the marriage dissolution by ensuring that his capital account was not considered in the Marital Agreement. His claim to an $8.5 million capital account as his own property in the Partnership dissolution differs dramatically from his previous Disclosure in the marital dissolution. And, Sharon and the Children—as adverse parties— would be severely injured if the District Court allowed him to claim his capital account.

¶31 Dennis's third issue on appeal concerns the appointment of Wicks and Crosby as special masters. For the first time, on appeal, he contends that the special masters lacked training and experience in accounting. We will not consider Dennis's assertion that the special masters lacked accounting experience because he did not object on those grounds in the District Court. *See State v. Rosling*, 2008 MT 62, ¶ 76, 342 Mont. 1, 180 P.3d 1102 (holding that to properly preserve an issue or argument for appeal, a party must raise it in the district court).

¶32 However, Dennis appeals the appointment of the special masters on other grounds that he raised in the District Court. He argues that the District Court erroneously appointed special masters who declined to address the capital accounts, did not execute an accounting,

15

did not review the Partnership Agreement, did not hold hearings, and did not determine property ownership and offsets. The tasks assigned by the District Court to the special masters disprove these claims.

¶33 The District Court has discretion to appoint a special master. *Pankratz*, ¶ 81. The District Court explained its decision to appoint Wicks and Crosby as special masters: "Because Mr. Wicks is already familiar with the property, he is a logical person to be appointed as special master to make a recommendation for the parties to consider, or for the Court's guidance if the parties are unable to resolve the matter." The District Court ordered Wicks to determine whether its practical to divide Partnership property without loss of value; to recommend an in-kind distribution of real estate, livestock, hay, machinery, and equipment based on a 2016 appraisal; to address the Hauser Lake house; to request relevant documents of the parties; and to report to the District Court. Later, the District Court ordered Crosby to provide an updated report on the current market value for all real property titled in the Partnership, equipment purchased since Wicks's previous report, all livestock, and all liquid cash assets and accounts receivable.

¶34 The District Court never ordered the special masters to review the Partnership Agreement, hold hearings, or consider offsets. The special masters were ordered to determine property ownership and incorporate the tasks previously mentioned. Any failures by the special masters to comply with the court order were subject to objection at hearings before the District Court. The District Court held evidentiary hearings addressing Dennis's objections to the appointment of special masters and, after considering all evidence before it, exercised its discretion appropriately and appointed Wicks and Crosby

16

as the special masters. The record also does not demonstrate that the special masters submitted erroneous reports; rather, they complied with court orders and submitted recommendations accordingly.

¶35 Dennis also appeals the District Court's Order granting partial summary judgment to Sharon and the Children regarding whether the interests in the Partnership gifted to the Children in 2014 were completed and whether the Children retain a 16% interest each in the Partnership. The District Court entered its decision to grant partial summary judgment following briefing by the parties and conducting a hearing. Based on the record, the District Court properly determined that Dennis failed to offer any genuine issues of material fact. Dennis instead makes conclusory allegations about the gifts. We conclude that the interests in the Partnership gifted to the Children are complete and cannot be rescinded.

¶36 Lastly, Dennis argues that the District Court erred when it determined that the Partnership owns the equipment, artwork, and cash in the Partnership bank account. Dennis does not present argument on appeal regarding the Partnership artwork and cash. The District Court was never presented with evidence that the artwork and cash were not Partnership property. Accordingly, we will not address issues specific to the ownership of the artwork and cash.

¶37 Dennis did object that he personally owned some of the Partnership equipment. Wicks testified that Dennis asked for all the equipment, so Wicks distributed it to him. Dennis now claims that some of the equipment allocated to him he personally owned, and so he effectively lost the value of the specific equipment upon dissolution of the

17

Partnership.  However, the equipment was listed on the Partnership Income Tax Return and depreciated.  And, if the equipment was personal property it should have been disclosed and distributed in the divorce proceedings.  Accordingly, for the same reasons set forth regarding the capital accounts, Dennis is estopped from contesting his own tax returns and from claiming he personally owned equipment not listed as equipment in his divorce proceeding.   We conclude the District Court was correct in adopting the Special Master's Report regarding distribution of the equipment.

¶38    We have determined to decide this case pursuant to Section I, Paragraph 3(c) of our Internal Operating Rules, which provides for memorandum opinions.  This appeal presents no constitutional issues, no issues of first impression, and does not establish new precedent or modify existing precedent.

¶39    Affirmed.


                                                    /S/ LAURIE McKINNON


We Concur:

/S/ JAMES JEREMIAH SHEA
/S/ INGRID GUSTAFSON
/S/ BETH BAKER
/S/ DIRK M. SANDEFUR